IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MARJORIE LYNN OSMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:20-cv-06105-MDH |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Marjorie L. Osmon seeks judicial review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401–434. For the following reasons, the Court affirms the decision of the Commissioner.

**BACKGROUND**

On December 17, 2015, Ms. Osmon filed a claim for DIB. (AR 61). She alleged a disability onset date of August 1, 2015, due primarily to brain bleed, diabetes, headaches, depression, anxiety, decreased short term memory, fatigue, diminished balance, weakness, and stiffness in joints. (AR 61–62). On February 17, 2016, the Social Security Administration denied Ms. Osmon's claim. (AR 76–79). Ms. Osmon then sought and appeared at an August 22, 2017 hearing before an Administrative Law Judge (ALJ). (AR 31, 83). On November 7, 2017, the ALJ issued an unfavorable decision and denied Ms. Osmon disability benefits. (AR 12, 25). Following this decision, on November 14, 2017, Ms. Osmon requested that the Appeals Council review the ALJ's

decision. (AR 135). On May 23, 2018, the Appeals Council refused to review the ALJ's November 7, 2017 denial.[1] (AR 1).

Following the Appeals Council's denial, Ms. Osmon appealed the ALJ's denial to the United States District Court for the Western District of Missouri and, on July 26, 2019, this Court reversed and remanded the ALJ's denial of Ms. Osmon's initial claim. (AR 701–07). The Court ordered that on remand the Commissioner "consider [Mr. Osmon's] obesity in accordance with SSR 19-2p." (AR 705). The Court affirmed the ALJ's decision on several other bases, including that substantial evidence supported the ALJ's decision to reject the examining medical source's opinion when formulating Ms. Osmon's mental RFC and that reversible error did not exist where the ALJ did not include limitations in the RFC for all of the mild and moderate disabilities noted at Step Two. (*See* AR 703–06).

On remand, the Appeals Council vacated the November 7, 2017 final decision denying Ms. Osmon's initial disability claim and ordered an ALJ to "offer [Ms. Osmon] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision for the period prior to August 11, 2019." (AR 708–10). On January 22, 2020, the ALJ, Scot Gulick, held another hearing on Ms. Osmon's initial disability claim. (AR 627–72). Following that hearing, on April 1, 2020, the ALJ again denied the claim in a written decision. (AR 604–19). Although the ALJ determined that Ms. Osmon had several severe impairments,[2] he concluded that none of those impairments met or medically equaled an impairment listed in the

---

[1] On August 16, 2018, after the Appeals Council declined to review the ALJ's denial of her first claim, Ms. Osmon filed a subsequent claim for Title II disability benefits. (AR 710). The ALJ in that case found that Ms. Osmon was disabled as of August 11, 2019. (*Id.*).

[2] On remand, the ALJ concluded that "[o]besity is no longer a listed impairment." (AR 610). However, the ALJ explained that he considered Ms. Osmon's obesity and stated that he "found the claimant's obesity to be severe in Finding 3, but the signs, symptoms[,] and laboratory findings in the record do not indicate that the claimant's obesity was so severe that it meets a listing." (AR 611). The ALJ then provided examples from the medical records to support his conclusion. (*See id.*).

Code of Federal Regulations, which would lead to a finding that Ms. Osmon was disabled. (AR 609–13). The ALJ ultimately determined that Ms. Osmon had a residual functional capacity (RFC) to perform less than the full range of sedentary work, including that Ms. Osmon:

> could lift and carry 10 pounds occasionally and 5 pounds frequently. She could stand and/or walk for two hours in an eight-hour workday, but for only 30 minutes at one time. She could sit for six hours in an eight-hour workday. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She could perform simple, routine, and repetitive tasks but not at a production rate pace.

(AR 613). After the ALJ's April 1, 2020 denial, the Appeals Council did not assume jurisdiction over Ms. Osmon's claim. Therefore, Ms. Osmon has exhausted all administrative remedies and judicial review is appropriate under 42 U.S.C. § 405(g) and 20 C.F.R. § 404.984(d).

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 423(d) rests on the claimant. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The Social Security Administration has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R §§ 404.1520, 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

> The Commissioner must evaluate:
> 
> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 754–55.

**STANDARD**

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (citation omitted). "Substantial evidence" is less than "a preponderance of the evidence," merely requiring that a reasonable person would find the evidence adequate to support the Commissioner's decision. *Id.* (citation omitted); *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

I. **Discussion**

Ms. Osmon raises three general issues in her appeal before this Court. First, Ms. Osmon contends that substantial evidence does not support the ALJ's physical RFC finding. Second, Ms. Osmon asserts that the ALJ did not properly consider the evidence as a whole when determining her mental RFC. Finally, Ms. Osmon argues that the ALJ did not properly determine that she could perform other work. The Court considers each general argument in turn.

A. *Substantial Evidence Supports the ALJ's Physical RFC Findings*

Ms. Osmon first argues that substantial evidence does not support the ALJ's physical RFC findings because the ALJ failed to account for and identify each of her medically determinable impairments and include limitations for those impairments in the RFC. In arguing this point, Ms. Osmon raises several issues. Specifically, Ms. Osmon contends that the ALJ failed to analyze her

hand, shoulder, and lumbar impairments. Ms. Osmon also argues that the ALJ failed to include a noise limitation in the RFC and that the opinion of Dr. Goldstein, a testifying medical expert, does not constitute substantial evidence upon which the ALJ could rely to support his RFC formulation.

In response, the Government asserts that the ALJ's decision reveals that the ALJ appropriately considered the record as a whole in determining Ms. Osmon's severe and non-severe physical impairments and whether those impairments caused any work-related limitations. Additionally, the Government contends that the record does not reflect a difficulty with sound beyond the initial recovery period from her aneurysm. Finally, the Government states that the ALJ afforded Dr. Goldstein's opinion great weight due to the ALJ's independent evaluation of the whole record and not based only on Dr. Goldstein's diagnoses or testimony.

The Court will address and reject each of Ms. Osmon's arguments pertaining to the physical RFC argument.

1. *Substantial Evidence Supports the ALJ's Conclusion that Ms. Osmon's Hand Condition Constituted a Non-Severe Impairment*

Ms. Osmon spends much of her briefing arguing that the ALJ did not properly account for her hand impairment and failed to include a "handling, fingering, or feeling" limitation in the RFC. (Doc. 11 at 14). However, substantial evidence supports the ALJ's finding that Ms. Osmon did not suffer from a severe hand impairment.

At step two of the evaluation, an ALJ will conclude that a claimant "is not disabled if his [or her] impairments are not 'severe.'" *Kirby*, 500 F.3d at 707 (citing *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 416.920(a)(4)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citations omitted). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the

requirement of step two." *Id.* (citation omitted). "It is the claimant's burden to establish that his [or her] impairment or combination of impairments are severe." *Id.* (citation omitted). "Severity is not an onerous requirement for the claimant to meet . . . but it is also not a toothless standard." *Id.* at 708 (citations omitted).

Here, the ALJ explained that Ms. Osmon suffered from a "non-severe status/post carpal tunnel release." (AR 610). The ALJ explained that this impairment constituted a non-severe impairment because "it did not cause more than minimal limitations in [Ms. Osmon's] ability to perform basic work activities." (*Id.*). In making this determination, the ALJ considered medical evidence in the record relating to Ms. Osmon's hand, including, among other things, that she underwent carpal tunnel release surgeries in 2013 and 2019 and that Ms. Osmon reported after her 2019 carpal tunnel release surgery "about 90% relief of the left hand symptoms." (AR 336, 610, 1119, 1039–40). Further, the ALJ noted that in her testimony during the November 2020 hearing, Ms. Osmon testified that her "fingers are no longer tingling." (AR 610, 645).

In his written decision, the ALJ explained why he found Ms. Osmon's hand impairment to be non-severe. (*See* AR 610). In providing that explanation he provided citations to the medical evidence in the record. (*See id.*). These citations show that at several points throughout her medical history Ms. Osmon experienced "good sensation and motor in the upper . . . extremities" and normal "[r]ange of motion for . . . wrists and finger," including 5/5 strength for her finger flexors. (AR 377, 404). Although Ms. Osmon points to evidence in the record that may support a finding that the problems she experienced with her hands constituted a severe impairment, the Court may not reverse ALJ's decision simply because evidence exists that also supports the alternate outcome. *Buckner*, 646 F.3d at 556; *see also Wright*, 789 F.3d at 852 (stating that in reviewing the decision of the ALJ, the Court must "defer heavily" to the Commissioner's findings and conclusions.);

*Mabry v. Colvin*, 815 F.3d 386, 389 (8th Cir. 2016) (stating that the Court does "not reweigh the evidence presented to the ALJ." (citations omitted)). Substantial evidence supports the ALJ's decision to find Ms. Osmon's hand impairment constitutes a non-severe impairment.

When discussing her hand impairment, Ms. Osmon also argues that the ALJ erred by categorizing her hand impairment as only caused by carpal tunnel and states that other conditions caused her hand impairment. She specifically states that her "hand impairment is complicated most by a C8 radiculopathy." (Doc. 11 at 15). However, the ALJ listed degenerative disc disease of cervical spine with radiculopathy as a severe impairment. (AR 609). "[F]ailure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 Fed. App'x 152, 156 (8th Cir. 2018) (quoting *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)). Because the ALJ listed Ms. Osmon's degenerative disc disease as a severe impairment and explained his consideration of Ms. Osmon's hand impairment, the Court cannot find that any failure to characterize Ms. Osmon's hand impairment as caused by her degenerative disc disease constitutes reversible error. *See id.*

For these reasons, substantial evidence supports the ALJ's decision to categorize Ms. Osmon's hand condition as non-severe and to not include a limitation for her hand impairment.

2. *Substantial Evidence Supports the ALJ's Conclusion that Ms. Osmon Lacked a Shoulder & Lumbar Impairment*

Ms. Osmon further argues that the ALJ erred by not recognizing an impairment for her shoulder or lumbar condition. Substantial evidence also supports this aspect of the physical RFC. Throughout Ms. Osmon's medical history she complained of both shoulder and lumbar pain. (*See, e.g.*, AR 278–79, 861). However, as to her shoulder impairment, medical records show that she attended physical therapy in 2016 and that her shoulder was "doing better and only hurt[] at times." (AR 513). In the discharge notes from her physical therapy it is noted that she "reported only

occasional shoulder pain" and the physical therapist noted that although she attended seven treatments, she cancelled three times and did not appear for one of her appointments. (AR 516). The physical therapist also noted that Ms. Osmon's did not return to physical therapy. (*Id.*) Further, examinations in 2019 showed that Ms. Osmon had 5/5 strength on bilateral shoulder abduction and "[n]ormal range of motion of the shoulders and arms." (AR 1116, 1122).

As to her lumbar condition, although the medical records document instances in which Ms. Osmon complained of pain in her lower back, (AR 278–79), evidence also shows normal findings, including "[i]ntact reflexes" and "[s]table gait," (AR 279). Ms. Osmon concedes that the ALJ's discussion of her cervical spine impairment includes references to her lumbar condition. (Doc. 11 at 19). Further, the physical RFC set forth by the ALJ includes limitations for lifting, carrying, standing, and walking. (AR 613).

Although evidence exists that shows that Ms. Osmon suffered from pain in her shoulder and lumbar area, the Court may not reverse the ALJ's decision simply because evidence exists in the record that supports the alternate conclusion. *Buckner*, 646 F.3d at 556. Ms. Osmon carries the burden to show that her conditions constitute severe impairments. *Kirby*, 500 F.3d at 707. Here, Ms. Osmon has failed to carry that burden. Substantial evidence supports the ALJ's decision to not include an impairment for Ms. Osmon's shoulder and lumbar condition.

3. *Substantial Evidence Supports the ALJ's Decision Not to Include a Noise Limitation in the RFC*

Ms. Osmon argues that the ALJ failed to include a "sensitivity to noise" limitation in her RFC. (Doc. 11 at 20). She concedes that the ALJ "noted" her complaints about a sensitivity to light, but states that the ALJ "did not consider her complaint that loud noises gave her headaches." (*Id.*).

Beyond a few references to headaches caused by loud noises, the record does not document a difficulty with sound. (*See, e.g.*, AR 197, 343, 365).  Further, in explaining Ms. Osmon's RFC, the ALJ recognized that her impairments caused many things, including "pain, . . . light sensitivity, . . . and other symptoms." (AR 613).  The ALJ specifically cited Exhibit 6E, pages 1–11, which encompass Ms. Osmon's complaints of a sensitivity to noise. (*See* AR 197, 613).  Based on the limited references to a difficulty with noise contained in the record, the Court cannot find that the ALJ's failure to include a noise limitation in the RFC constitutes a reversible error.  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 190–91 (8th Cir. 2018) (stating that a reviewing court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." (citing *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)).  For these reasons, the Court will not reverse on this basis.

4. *The ALJ Did Not Commit Reversible Error in Affording "Great Weight" to Dr. Goldstein's Opinion*

Ms. Osmon additionally argues that Dr. Goldstein's opinion does not constitute substantial evidence on which the ALJ could rely to formulate Ms. Osmon's RFC.  A claimant's RFC is a medical question, therefore "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (citing *Cox,* 495 F.3d at 619–20).

Ms. Osmon takes issue with Dr. Goldstein's opinion for several reasons, including that he did not "properly assess [her] hand impairments," did not "address her shoulder and lumbar

abnormalities" and "did not identify headaches as an impairment." (Doc. 11 at 21). Further, she argues that he cited to the record only a limited number of times. (*Id.*).

In formulating the RFC the ALJ conducted a thorough review of the medical evidence in the record and considered Ms. Osmon's subjective complaints and the opinions of medical experts. (*See* 613–17). In discussing Dr. Goldstein's opinion specifically, the ALJ expressly stated that "Dr. Goldstein's opinions are largely consistent with the weight of the current record." (AR 617). The ALJ recognized that Dr. Goldstein "did not have the benefit of physically examining the claimant," but explained that Dr. Goldstein "supported his opinions with detailed explanations citing to objective evidence." (*Id.*). The ALJ also included Ms. Osmon's headaches as a listed severe impairment, which Dr. Goldstein did not do.[3] (*Compare* AR 609 *with* AR 661–62). The Court has previously established above that substantial evidence supports the ALJ's assessment of Ms. Osmon's hand impairment and shoulder and lumbar conditions.

Because the ALJ recognized impairments and included limitations beyond those recognized by Dr. Goldstein, it is clear that the ALJ did not rely solely on Dr. Goldstein's opinion in formulating the RFC. Rather, the ALJ considered Ms. Osmon's medical records, the opinions provided by medical experts, and Ms. Osmon's own subjective complaints. (*See* AR 613–17). Therefore, substantial evidence supports the physical RFC and the Court will not reverse on this basis.

---

[3] In discussing her headaches, Ms. Osmon cites *Gayer v. Saul*, No. 6:19-cv-03302-DGK-SSA, 2020 WL 4937511 (W.D. Mo. Aug. 24, 2020). Ms. Osmon argues that "[a]pplication of the factors in *Gayer* renders the ALJ's decision equally incomplete." (Doc. 11 at 23). However, this case differs from *Gayer*. Specifically, in *Gayer*, the ALJ found that the claimant suffered from the severe impairments of "cerebral aneurysm status post clipping with subsequent headaches and hypertension" and the reviewing court reversed because the ALJ's decision did not indicate whether the ALJ considered other evidence "related to the severity and causation of [the claimant's] headaches." 2020 WL 4937511, at *1. Here, the ALJ concluded that Ms. Osmon's headaches constituted a separate severe impairment and did not limit that impairment to headaches caused by her aneurysm with cerebral hemorrhage. (AR 609). Further, the ALJ explained why he found Ms. Osmon's subjective complaints regarding her headaches inconsistent with the record. (AR 615). For these reasons, *Gayer* does not provide the support Ms. Osmon seeks.

B. *Substantial Evidence Supports the ALJ's Mental RFC.*

Having concluded that substantial evidence supports the ALJ's physical RFC, the Court now turns to Ms. Osmon's second general argument that substantial evidence does not support the mental RFC. The Court concludes that substantial evidence also supports the ALJ's mental RFC.

Ms. Osmon makes three arguments regarding the ALJ's mental RFC: (1) the ALJ afforded undue weight to an opinion from Dr. Morgan, an agency medical consultant over that of Dr. Edwards, a consultative examiner; (2) the ALJ unreasonably discounted Ms. Osmon's statements about her mental impairments; and (3) the ALJ did not account for mental limitations in Ms. Osmon's RFC.

In response, the Government argues that the ALJ found severe mental impairments of depression and anxiety, and, as a result, limited Ms. Osmon to work that involved simple, routine, and repetitive tasks that were not at production rate. Furthermore, the Government states that the ALJ properly considered Ms. Osmon's allegations, treatment history, objective examination findings, and the medical opinion evidence of record when making the mental RFC finding.

1. *Substantial Evidence Supports the ALJ's Decisions Regarding the Weight to Assign to the Medical Experts' Opinions*

Substantial evidence supports the ALJ's decision to give the opinion of Dr. Morgan, an agency medical consultant, more weight than the opinion of Dr. Edwards, an agency consultative examiner who evaluated Ms. Osmon.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, no requirement exists that an RFC finding be supported by a specific medical opinion. *Id.*; *see also Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012).

The ALJ concluded that Dr. Edwards did not support her opinions with well-supported, medically acceptable clinical and laboratory diagnostic techniques and that her opinions were vague and inconsistent with Ms. Osmon's medical records, treatment history, and activities of daily living. (*Id.*). Dr. Morgan's opinion, however, was found to be largely consistent with the weight of the record. (*Id.*). For instance, Dr. Morgan's findings that Ms. Osmon suffered from mental impairments is consistent with Ms. Osmon's medical records, treatment history, and activities of daily living. (*Id.*). Thus, Dr. Morgan's opinion used objective evidence in determining that Ms. Osmon's mental impairments were not severe.

Therefore, the ALJ sufficiently explained the inconsistencies in Dr. Edwards's opinions that led to the ALJ giving greater weight to Dr. Morgan's opinions.

2. *Substantial Evidence Supports the ALJ's Decision to Find Ms. Osmon's Subjective Complaints Inconsistent with the Record*

The Court now turns to Ms. Osmon's contention that the ALJ unreasonably discounted her statements about her mental impairments. Substantial evidence supports the ALJ's decision to conclude that Ms. Osmon's subjective complaints about her mental limitations were inconsistent with the record.

The ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski*, 739 F.2d at 1322). "[A]n ALJ may not discount

a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir.2009)). "When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors." *Id.* (citing *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)). The ALJ is not required to discuss each *Polaski* factor as long as "he [or she] acknowledges and considers the factors before discounting a claimant's subjective complaints." *Id*. (quoting *Moore*, 572 F.3d at 524).

Here, the ALJ appropriately evaluated the consistency of Ms. Osmon's statements regarding her mental limitations with the overall record. The ALJ considered Ms. Osmon's statements concerning the intensity, persistence, and limiting effects of the symptoms caused by her mental impairments and found that those symptoms were not consistent with the medical evidence and other evidence in the record. The ALJ reached this conclusion because healthcare providers described her depressive disorder as moderate, and the range of activity Ms. Osmon identified is not entirely consistent with a finding of disability. (AR 615–16).

The ALJ properly considered the *Polaski* factors in determining the evidence regarding Ms. Osmon's subjective complaints. The ALJ considered the Ms. Osmon's daily activities. Specifically, Ms. Osmon was able to live with others, take care of pets, manage her personal care, prepare meals, do laundry, vacuum, go outside, walk, drive, ride in a car, go out alone, shop, manage her finances, watch television, read, crochet, spend time with others, and use a computer. (AR 611). The ALJ determined this based on Ms. Osmon's testimony. (AR 197–207). In addition to Ms. Osmon's testimony, other evidence showed that she was cooperative, appropriate, and alert at numerous examinations and that her attention and concentration were within normal limits

during numerous examinations and interviews. (AR 321, 336, 403, 599, 611–12, 861, 977). Thus, the ALJ considered Ms. Osmon's daily activities, the absence of objective medical evidence to support the claimant's complaints, and any functional restrictions to properly assess whether Ms. Osmon's subjective complaints were credible. Accordingly, substantial evidence supports the ALJ's decision to reject Ms. Osmon's subjective complaints.

> 3. *Substantial Evidence Supports the ALJ's Decision to Include Only Those Mental Limitations Identified in the RFC*

The Court now turns to Ms. Osmon's contention that the ALJ erred in not including limitations in the RFC for the mental impairments identified in the written decision. Substantial evidence supports the ALJ's decision to include only those limitations identified in the RFC.

The ALJ's RFC assessment must be based on "all the relevant evidence in [the] case record." *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016) (citing 20 C.F.R. § 404.1545(a)). An ALJ may consider the opinion of another medical source "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function." *Chesser v. Berryhill*, 858 F.3d 1161, 1166 (8th Cir. 2017) (citing SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)). However, the Court considers only whether the ALJ's decision is supported by substantial evidence, not whether it would have made the same decision. *Dols v. Saul*, 931 F.3d 741, 748 (8th Cir. 2019) (see *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007)).

Here, the ALJ properly documented consideration of the evidence as a whole when crafting the mental RFC. The ALJ appropriately determined the weight to afford to the medical experts' opinions and considered Ms. Osmon's subjective complaints.

Ms. Osmon argues that because there was a finding of mild mental limitations that the ALJ should have included those limitations in her RFC. This interpretation, however, does not suffice as an appropriate showing that Ms. Osmon's mental limitations were severe enough to be included

in a mental RFC. It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The ALJ appropriately found that Ms. Osmon had a mild limitation in interacting with others based on her own testimony and other evidence in the record. (AR 321, 336, 403, 599, 611–12, 861, 977). Though Ms. Osmon reported problems with being around others, at numerous examinations physicians found her to be cooperative, appropriate, and alert. Additionally, Ms. Osmon noted that she got along with authority figures and interacted effectively with other during her activities of daily living. (AR 202, 197–207). Therefore, substantial evidence supports the ALJ's decision to include only those limitations identified in Ms. Osmon's mental RFC.

    C. *Substantial Evidence Supports the ALJ's Conclusion that Ms. Osmon Could Perform Other Work*

Having addressed Ms. Osmon's arguments regarding the physical and mental RFC, the Court now turns to Ms. Osmon's final general argument that the ALJ erred in determining that she could perform other work. Ms. Osmon contends that the ALJ reached this conclusion in error because the hypothetical posed to the vocational expert (VE) was not based on an accurate RFC and the ALJ failed to resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). The Government argues that the ALJ satisfied his burden at step five of the analysis because the ALJ used VE testimony in establishing that Ms. Osmon could perform other work. Similarly, the Government contends that the VE resolved the conflict between her testimony and the DOT. Substantial evidence also supports the ALJ's conclusion that Ms. Osmon could perform other work.

The Dictionary of Occupational Titles provides "standardized occupational information" by listing the functional requirements for a number of jobs available in the national economy. *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). The reference book

explains, however, that the job characteristics for each position "reflect jobs as they have been found to occur, but . . . may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Id.* Thus, "not all of the jobs in every category have requirements identical to or as rigorous as those listed in the [Dictionary]." *Id.* (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)). The reference book "gives the approximate maximum requirements for each position." *Id.* (quoting *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995)). Although, the ALJ may rely on testimony from a vocational expert that conflicts with the job requirements listed in the Dictionary, *id.; see also Thomas v. Berryhill*, 881 F.3d 672, 677–78 (8th Cir. 2018), "[w]hether the vocational expert's testimony is substantial evidence in support of the ALJ's decision . . . depends on whether the expert's testimony appears to conflict with the Dictionary, and if so, whether the ALJ resolved the conflict," *Stanton*, 899 F.3d at 558.

Here, the ALJ determined that the VE testified consistently with the DOT descriptions and resolved any conflict between her testimony and the job requirements in the DOT. (AR 618). For instance, in answering the hypotheticals posed by the ALJ, the VE testified that she relied both on the DOT's descriptions and, for issues not addressed directly by the DOT, she relied on her training and experience. (AR 618). A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (citation omitted). SSR 00-4p makes it proper for the VE to rely on her own experience in job placement or career counseling to appropriately determine that a claimant can do other work. Therefore, substantial evidence supports the ALJ's finding the Ms. Osmon could perform other work in the national economy.

## CONCLUSION

For the reasons set forth herein, the Court finds the Commissioner's determination that Ms. Osmon was not disabled is supported by substantial evidence in the record. Accordingly, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: June 9, 2021     /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**